**INDEX OF EXHIBITS TO**
PLAINTIFF'S VERIFIED COMPLAINT

Highway Technologies, Inc. v. David Porter and Susan Porter; Rodd Jose and Barbara
Jose; Sunline Contracting, L.L.C.

Exhibit A    Employment Agreement between Highway Technologies, Inc. and Rodd
Jose dated March 31, 2006.

Exhibit B    Employment Agreement between Highway Technologies, Inc. and David
Porter dated January 9, 2008.

# EXHIBIT A

## EMPLOYMENT AGREEMENT

This Agreement between UNITED RENTALS HIGHWAY TECHNOLOGIES, INC., having an office 4200 E Broadway Ave, Phoenix, Arizona 85040, UNITED RENTALS, INC., having a principal place of business at Five Greenwich Office Park, Greenwich, CT 06830 (United Rentals, Inc. and all of its affiliates shall collectively be referred to herein as the "Company"), and Rodd Jose ("Employee") is hereby entered into as of March 31, 2006. It cancels and supersedes all prior agreements with respect to the subject matter hereof.

Recitals:

The Company engages in the business of renting, selling, operating, financing, maintaining and otherwise dealing in or with equipment or similar assets, and of buying companies that engage in such activities. The Company may in the future also engage in other businesses. The businesses in which the Company is at any time engaged are collectively referred to as the "Business."

Employee is or will be employed by the Company in a confidential relationship where Employee, in the course of his or her employment with the Company, has become or will become familiar with and aware of information which was established and maintained at great expense to the Company; this information is a trade secret and constitutes valuable goodwill of the Company. The protection of these trade secrets is of critical importance to the Company.

The Company will sustain great loss and damage if Employee should violate the provisions of this Agreement. Monetary damages for such losses would be extremely difficult to measure.

NOW, THEREFORE, in consideration of the mutual promises, terms, covenants and conditions set forth herein and the performance of each, it is hereby agreed as follows:

1. Employment At Will; Full Time, Etc.

   (a)  Employee is employed on at-will basis. His employment may be terminated by the Company or by the Employee at any time on an at-will basis.

   (b)  During his employment, Employee shall devote his full time, attention and use best efforts to promote and further the business and services of the Company. Employee shall faithfully adhere to, execute and fulfill all policies established by the Company. Employee shall not, during his employment, be engaged in any other business activity pursued for gain, profit or other pecuniary advantage without the prior written consent of the Company.

   (c)  All funds received by Employee on behalf of the Company, if any, shall be held in trust for the Company and shall be delivered to the Company as soon as practicable.

   (d)  The Company shall reimburse Employee for properly documented expenses that are incurred by Employee on behalf of the Company in accordance with Company policies in effect from time to time.

2. Confidentiality and Company Property. During and at all times after Employee's employment:

   (a)  Employee will not disclose to any person or entity, without the Company's prior consent, any confidential or secret information, whether prepared by him or others.

   (b)  Employee will not directly or indirectly use any such information other than as directed by the Company in writing.

   (c)  Employee will not, except in the furtherance of the business of the Company, remove confidential or secret information from the premises of the Company without the prior written consent of the Company.

1

(d)    All products, correspondence, reports, records, charts, advertising materials, designs, plans, manuals, "field guides," memoranda, lists and other property compiled or produced by Employee or delivered to Employee by or on behalf of the Company or by its customers (including, but not limited to, customers obtained by the Employee), whether or not confidential, shall be and remain the property of the Company and shall be subject at all times to its direction and control.

(e)    Employee will, upon termination of his employment for whatever reason, with or without cause, promptly deliver to the Company all originals and copies (whether in note, memo or other document form or on video, audio or computer tapes or discs or otherwise) of all confidential or secret information, and of all property referred to in Section 2(d), that is in his possession, custody or control, and whether prepared by Employee or others.

(f)    Confidential information includes, but is not limited to:

    (i)    business, pricing and management methods;

    (ii)    finances, strategies, systems, research, surveys, plans, reports, recommendations and conclusions;

    (iii)    names of, arrangements with, or other information relating to, the Company's customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives and other persons who have business relationships with the Company or who are prospects for business relationships with the Company;

    (iv)    technical information, work products and know-how;

    (v)    cost, operating, and other management information systems, and other software and programming; and

    (vi)    the name of any company or business, all or any substantial part of which is or at any time was a candidate for potential acquisition by the Company, together with all analyses and other information which the Company has generated, compiled or otherwise obtained with respect to such candidate, business or potential acquisition, or with respect to the potential effect of such acquisition on the Company's business, assets, financial results or prospects.

3.   <u>Non-Compete Provisions.</u>  The following covenants are made by Employee in partial consideration for the substantial economic investment made by the Company in the hiring, education and training of Employee and the compensation and other benefits afforded by the Company to the Employee.  Such covenants were material inducements to the Company in hiring Employee.

(a)    During his employment by the Company and for a period of 24 months immediately following the termination of his employment for any reason whatsoever, whether or not for cause, Cause defined as: (I) Insobriety while acting within the course and scope of employment; (II) Employee's conviction of a felony for acts committed in the course of the performance of his duties under this Agreement; or (III) Employee's gross neglect, incompetence, or misconduct in the performance of duties assigned to him under this agreement, provided that such behavior substantially and materially disrupts the Company's business, provided further than the Company has given him written notice specifying in detail the nature of the behavior and its intention to terminate if he does not cure such behavior, and provided further that Employee does not cure such behavior within 30 working days of the Company's submission to him of such written notice, Employee will not, directly or indirectly (whether through affiliates, relatives or otherwise):

    (i)    in any Restricted Area (a "Restricted Area" means the area within a 200 mile radius of any and all Company locations in which Employee performed services for, or had management responsibilities for, at any time during the 12 month period preceding the termination of Employee's employment with the Company), be employed or retained by any person or entity who competes with the Company in the Pavement Marking business to any extent, nor will Employee directly or indirectly own any interest in any such person

2

or entity or render to it any consulting, brokerage, contracting, financial or other services or any advice, assistance or other accommodation;

(ii)   solicit or accept the business of, or call upon, any person or entity who or which is or was (A) a customer, supplier, manufacturer, finder, broker, or other person who had a business relationship with the Company, or who was a prospect for a business relationship with the Company, at any time during the period of his employment, or (B) an affiliate of any such person;

(iii)   approve, solicit or retain, or discuss the employment or retention (whether as an employee, consultant or otherwise) of any person who was an employee of the Company at any time during the one-year period preceding the termination of Employee's employment by the Company;

(iv)   solicit or encourage any person to leave the employ of the Company;

(v)   call upon or assist in the acquisition of any company which was, during the term of this Agreement, either called upon by an employee of the Company or by a broker or other third party, for possible acquisition by the Company or for which an employee of the Company or other person made an acquisition analysis for the Company; or

(vi)   own any interest in or be employed by or provide any services to any person or entity, which engages in any conduct, which is prohibited to Employee under this Section 3(a).

(b)   Employee shall be deemed to be employed or retained in the Restricted Area if Employee has an office in the Restricted Area or if Employee performs any duties or renders any advice with respect to any facility or business activities in the Restricted Area.

(c)   Before taking any position with any person or entity during the 24 month period following the termination of his or her employment for any reason, with or without cause, Employee will give prior written notice to the Company of the name of such person or entity. The Company shall be entitled to advise each such person or entity of the provisions of this Agreement, and to correspond and otherwise deal with each such person or entity to ensure that the provisions of this Agreement are enforced and duly discharged.

(d)   All time periods in this Agreement shall be computed by excluding from such computation any time during which Employee is in violation of any provision of this Agreement and any time during which there is pending in any court of competent jurisdiction any action (including any appeal from any final judgment) brought by any person, whether or not a party to this Agreement, in which action the Company seeks to enforce the agreements and covenants in this Agreement or in which any person contests the validity of such agreements and covenants or their enforceability or seeks to avoid their performance or enforcement.

(e)   Employee understands that the provisions of this Agreement have been carefully designed to restrict his activities to the minimum extent that is consistent with law and the Company's requirements. Employee has carefully considered these restrictions, and Employee confirms that they will not unduly restrict Employee's ability to obtain a livelihood. Employee has heretofore engaged in businesses other than the Business. Before signing this Agreement, Employee has had the opportunity to discuss this Agreement and all of its terms with his attorney.

(f)   Since monetary damages will be inadequate and the Company will be irreparably damaged if the provisions of this Agreement are not specifically enforced, the Company shall be entitled, among other remedies (i) to an injunction restraining any violation of this Agreement (without any bond or other security being required) by Employee and by any person or entity to whom Employee provides or proposes to provide any services in violation of this Agreement, (ii) to require Employee to hold in a constructive trust, account for and pay over to the Company all compensation and other benefits which Employee shall derive as a result of any action or omission which is a violation of any provision of this Agreement and (iii) to require Employee to account for

3

and pay over to the Company any net profit earned by the Employee from the exercise, during the 24 month period prior to the termination of his employment, of any stock options issued to him by the Company.

(g) If any provision contained in this Agreement is determined to be void, illegal or unenforceable, in whole or in part, then the other provisions contained herein shall remain in full force and effect as if the provision which was determined to be void, illegal, or unenforceable had not been contained herein.

(h) The courts enforcing this Agreement shall be entitled to modify the duration and scope of any restriction contained herein to the extent such restriction would otherwise be unenforceable, and such restriction as modified shall be enforced.

4. <u>Salary Continuation.</u>

(g) In the event Employee's employment was terminated by the Company without "cause," the provisions of Section 2(a)(i) and 2(a)(ii) above, shall, in all events, <u>expire</u> on the date on which both (A) and (B) shall be true; namely, (A) Employee has not theretofore breached any of his obligations hereunder, and (B) the Company, at its option, has elected, by not less than 10 days notice to Employee, not to, or no longer to, voluntarily pay to Employee, every week, 1/52nd of (i) <u>50 % of the</u> total compensation paid to Employee by the Company during the 12 month period immediately preceding termination of his employment; *provided, however,* all payments to Employee provided in this Section 3(a) shall be conditioned upon Employee's execution of a separation agreement and general release, in such form as the Company, in its sole discretion determines. In the event, (x) the Company elects to provide to Employee the payments set forth in this Section 3(a) <u>and</u> (y) Employee fails to execute the aforementioned separation agreement and general release, the provisions of Section 2(a)(i) and 2(a)(ii) shall remain in effect for the full term specified in this Agreement, notwithstanding the fact that the Company shall not be obligated to provide to Employee the payment set forth in this Section 3(a).

(h) As used in this Section 3, Employee's "total compensation," for any period, shall be limited to all salary and wages, overtime compensation, profit-sharing, commission and bonus amounts paid during such period in cash, plus the aggregate amount of price guarantees by the Company in respect of any restricted stock granted in lieu of a cash bonus during such period. All such payments by the Company to the Employee shall be subject to the same withholding as applied during his employment. To the extent any portion of total compensation was paid in the form of price guarantees on restricted stock, a pro rata portion of the bi-weekly payments referred to in Section 3(a) may, at the Company's option, be paid by way of price guarantees in respect of new grants of restricted stock.

(i) As used in this Section 3, "cause" as defined in Section 2 (a)

5. <u>Inventions.</u> Employee shall promptly disclose to the Company any and all conceptions and ideas for inventions, improvements and valuable discoveries, whether patentable or not, which are conceived or made by Employee, solely or jointly with another, during the period of employment or within one year thereafter and which are related to the business or activities of the Company or which Employee conceives as a result of his employment by the Company, and Employee hereby assigns and agrees to assign all his interests therein to the Company or its nominee. Whenever requested to do so by the Company, Employee shall execute any and all applications, assignments or other instruments that the Company shall deem necessary to apply for and obtain Letters of Patent of the United States or any foreign country or to otherwise protect the Company's interest therein. These obligations shall continue beyond the termination of employment with respect to inventions, improvements and valuable discoveries, whether patentable or not, conceived, made or acquired by Employee during the period of employment or within one year

thereafter, and shall be binding upon Employee's assigns, executors, administrators and other legal representatives.

6.   Jurisdiction, Arbitration & Attorney's Fees.

(a)   Consent to Personal Jurisdiction. Employee hereby agrees that the interpretation and enforcement of the provisions of this Agreement shall be resolved and determined exclusively by the state court sitting in Fairfield County, Connecticut or the federal courts in the District of Connecticut and Employee hereby consents that such courts be granted exclusive jurisdiction for such purpose. Employee hereby acknowledges that, in the performance of his duties, Employee will maintain significant contacts with the Company's corporate offices in Connecticut, including, without limitation, telephone and email contacts with corporate personnel, access to corporate databases maintained in Connecticut, required attendance at certain training and/or strategic meetings, and payment of business related travel and entertainment expenses.

(b)   Waiver of Jury Trial.   Employee agrees to waive a trial by jury in all legal disputes brought pursuant to this Agreement.

(c)   Waiver of Service.   Employee agrees to waive formal service of process under any applicable federal or state rules of procedure.   Service of process shall be effective when given in the manner provided for notices hereunder.

(d)   Arbitration of Certain Claims by Employee.

(i)   Except for matters referred to in Section 5(a), any and all claims by Employee relating to any matter arising during or after the employment of the Employee by Company or in connection with the cessation of said employment shall be resolved exclusively by arbitration conducted by one arbitrator in accordance with the National Rules for the Resolution of Employment Disputes established by the American Arbitration Association (AAA). The Company will provide a copy of these Rules to Employee on request. The decision of the arbitrator will be final and binding on both parties.

(ii)   The claims and disputes to be arbitrated under this Section 5(b) ("Arbitrable Claims") include without limitation, disputes or claims arising under (A) federal, state, and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, (B) the law of contract and (C) the law of tort.

(iii)   Each Arbitrable Claim shall automatically expire unless Employee begins arbitration for the claim no later than the first anniversary of the day on which the Employee learned or reasonably should have learned that he may have such claim.

(e)   Attorneys' Fees.   In the event any party hereto institutes any proceeding against any other party with respect to any controversy or matter arising out of this Agreement, the prevailing party shall be entitled to recover from the nonprevailing party such prevailing party's reasonable attorneys' fees and costs incurred in connection with any such proceeding.

6.   Suits Against Company.

(a)   Both during and after the term of employment hereunder, Employee covenants that Employee will not bring suit or file counterclaims against the Company, for corporate misconduct (which for this purpose does not mean matters for which Employee has a personal claim against the Company in his capacity as an employee), unless both of (i) and (ii) shall have occurred, namely:

(i)   Employee shall have first made written demand to the Company's Board of Directors to investigate and deal with such misconduct, and

(ii)   The Board of Directors shall have failed within 45 days after the date of receipt of such

5

demand to establish a Special Litigation Committee, consisting exclusively of outside directors, to investigate and deal with such misconduct.

(b)   Without limiting the generality and to further implement the foregoing, Employee irrevocably and unconditionally consents at the option of the Company to the entry of temporary restraining orders and temporary and permanent injunctions (without posting bond or other security) against the filing of any action or counterclaim that is prohibited hereunder.

(c)   The opinion of the Board of Directors shall be binding and conclusive on the determination of which directors constitute "outside directors," and the determination of the Special Litigation Committee shall be binding and conclusive on all matters relating to the actual or alleged misconduct which is referred to it as aforesaid.

7.   <u>Cooperation in Proceedings.</u>   During and after the termination of Employee's employment, Employee will cooperate fully and at reasonable times with the Company and its subsidiaries in all litigations and regulatory proceedings on which the Company or any subsidiary seeks Employee's assistance and as to which Employee has any knowledge or involvement. Without limiting the generality of the foregoing, Employee will be available to testify at such litigations and other proceedings, and will cooperate with counsel to the Company in preparing materials and offering advice in such litigations and other proceedings. If Employee is not then employed by the Company, the Company shall pay to Employee reasonable compensation for documented time spent in such cooperation, consistent with his compensation from the Company prior to termination. Except as required by law and then only upon reasonable prior written notice to the Company, Employee will not in any way cooperate or assist any person or entity in any matter which is adverse to the Company or to any person who was at any time an officer or director of the Company.

8.   <u>No Derogation.</u>   Except as otherwise required by law (and then only upon 10 days' prior written notice to the Company), Employee will not from and after the date hereof, whether during Employee's employment or at any time thereafter, in any way or to any person, denigrate or derogate the Company or any of its subsidiaries, or any person who was at any time an officer or director of the Company, or any products, services or procedures, whether or not such denigrating or derogatory statements shall be true and are based on acts or omissions which were learned or are learned by Employee heretofore or from and after the date hereof or on acts or omissions which occurred at any time heretofore or which occur at any time from and after the date hereof, or otherwise.

9.   <u>Miscellaneous.</u>

(a)   This Agreement is not a promise of employment. There are no oral representations, understandings or agreements with the Company or any of its officers, directors or representatives covering the same subject matter as this Agreement. This written Agreement is the final, complete and exclusive statement and expression of the agreement between the Company and Employee and of all the terms of this Agreement, it cancels and supersedes all prior agreements with respect to the subject matter hereof, and it cannot be varied, contradicted or supplemented by evidence of any prior or contemporaneous oral or written agreements. This written Agreement may not be later modified except by a further writing signed by the Company and Employee, and no term of this Agreement may be waived except by a writing signed by the party waiving the benefit of such terms.

(b)   No waiver by the parties hereto of any default or breach of any term, condition or covenant of this Agreement shall be deemed to be a waiver of any subsequent default or breach of the same or any other term, condition or covenant contained herein.

(c)   This Agreement shall be binding upon and inure to the benefit of the parties thereto and their respective heirs, successors and assigns.

(d)   Employee's obligations under this agreement are conditioned upon the Company's payment to Employee of $10,000 within 10 days of his execution of this agreement.

(e)   Whenever any notice is required hereunder, it shall be given in writing addressed as follows:

6

BM –7/17/03

(f)     Upon the parties' execution of this Agreement the Company will provide Employee with a current 4x4 pickup truck or comparable vehicle for his use during his employment under this Agreement. The Company may lease or purchase such vehicle, at its option, and will be responsible for the purchase price and /or lease payments, taxes, registrations fee, and license fees associated with the vehicle.   The company will reimburse Employee for the cost of maintenance, fuel and upkeep associated with the business use of the vehicle, provided that Employee submits evidence of such expenses and also submits to the Company on an annual basis a reasonably detailed calculation of the amount of miles the vehicle is used for personal and business use, respectively.

To the Company:              Attn: Rob Odom
                             United Rentals Highway Technologies, Inc.
                             3116 S. Roosevelt
                             Tempe, AZ. 85282

with a copy to:

                             Attn: Legal Department
                             United Rentals, Inc.
                             Third Floor
                             Five Greenwich Office Park
                             Greenwich, Connecticut 06830,

                             To Employee:
                             Rodd Jose
                             6831 E Joan De Arc
                             Scottsdale, AZ  85254


Notice shall be deemed given and effective (a) five business days after the deposit in the U.S. mail of writing addressed as above and sent first class mail, certified, return receipt requested, (b) one business day after delivered to a nationally recognized air courier for next day delivery service, or (c) upon personal delivery.  Either party may change the address for notice by notifying the other party of such change in accordance with this paragraph.

(e)     If any portion of this Agreement is held invalid or inoperative, the other portions of this Agreement shall be deemed valid and operative, and so far as it is reasonable and possible, effect shall be given to the intent manifested by the portion held invalid or inoperative.  The paragraph headings herein are for reference purposes only and are not intended in any way to describe, interpret, define or limit the extent or intent of this Agreement or any part hereof.

(f)     This Agreement shall in all respects be constructed according to the laws of the State of Connecticut.

UNITED RENTALS, INC.                                          EMPLOYEE:

BY: _Rob Odom_ 3-31-06                          _Rodd Jose_ 3-31-06
                                                          Rodd Jose          Date
NAME: Rob Odom
TITLE: District Manager

UNITED RENTALS HIGHWAY TECHNOLOGIES, INC.

BY: _Rob Odom_
NAME: Rob Odom
TITLE: District Manager

7

BM –7/17/03

# EXHIBIT B



**HIGHWAY TECHNOLOGIES**

January 7, 2008

Dave Porter
2307 Flora Street
Lakewood, CO 80228

Dear Dave:

As you've discussed with Rod Pekurney, on behalf of Highway Technologies, Inc. (the "Company" or "HT"), we are pleased to offer you the position of **Hub Branch Manager**, at the Company's Phoenix, AZ location.  In this capacity, you will report to Rod Pekurney, Regional Vice President of the Western Region.  This offer is contingent upon the following terms and conditions and your prompt signing and returning of this offer letter.

As it is now, your employment with the Company will continue to be on an "at-will" basis, and either you or the Company may terminate your employment at any time.

Your salary will be $140,000 per year, subject to applicable withholding taxes.  At the sole discretion of the Company, you will be considered for an annual bonus if you are employed through the date annual bonus payments are made and otherwise meet bonus eligibility requirements.

The Company provides you the opportunity to participate in a comprehensive employee benefits program in accordance with eligibility requirements.

In order to assist with your relocation from Colorado to Arizona, the Company will agree to pay for the following:

- Home Finding Assistance – up to two (2) trips of 3 days to Phoenix from Denver – one for you and your spouse and one for you, your spouse and children.  These reimbursable expenses include: airfare; lodging; meals per diem; rental car; and one general home inspection or homeowner's warranty up to $300;
- Temporary Housing to be agreed upon for up to 90 days;
- Duplicate Housing – if you close on a home in the Phoenix area before closing on your home in the Denver area, then duplicate housing expenses (which consist of interest on the first mortgage only, real estate taxes, insurance and utilities) will be reimbursed on the house with the lowest costs for a maximum period of up to 90 days with appropriate documentation;
- Professional moving expenses with a company to be agreed upon by the Company and you; and
- Payment of normal and customary non-recurring closing costs, including agreed upon realtor fees, for selling your house in Denver ("grossed up" for taxable benefits).

Relocation Re-Payment Agreement:  You are expected to remain employed with the Company at the Phoenix location for at least two years from the transfer date (the signed date of this offer letter), unless you are transferred again at the request of the Company and mutually agreed upon by you.   If you voluntarily terminate your employment with the Company or are terminated for cause prior to the expiration of this two-year period, relocation benefits will cease immediately and you must re-pay, on a pro rated basis, all relocation expenses previously reimbursed or paid by the Company. This offer letter and Repayment Agreement must be signed and returned to the Company prior to the initiation of any relocation benefits.

Confidentiality and Company Property.   During and at all times after your employment with HT:

(a)   You will not disclose to any person or entity, without the Company's prior consent, any confidential or secret information, whether prepared by him/her or others.

(b)   You will not directly or indirectly use any such information other than as directed by the Company in writing.

(c)   You will not, except in the furtherance of the business of the Company, remove confidential or secret information from the premises of the Company without the prior written consent of the Company.

(d)   All products, correspondence, reports, records, charts, advertising materials, designs, plans, manuals, "field guides," memoranda, lists and other property compiled or produced by you or delivered to you by or on behalf of the Company or by its customers (including, but not limited to, customers obtained by you), whether or not confidential, shall be and remain the property of the Company and shall be subject at all times to its direction and control.

(e)   You will, upon termination of employment for whatever reason, with or without cause, promptly deliver to the Company all originals and copies (whether in note, memo or other document form or on video, audio or computer tapes or discs or otherwise) of all confidential or secret information, and of all property referred to in Section 2(d), that is in his possession, custody or control, and whether prepared by you or others.

(f)   Confidential information includes, but is not limited to:

(i)   the name of any company or business all of any substantial part of which is or at any time was a candidate for potential acquisition by the Company, together with all analyses and other information that the Company has generated, compiled or otherwise obtained with respect to such candidate;

(ii)   business, pricing and management methods;

(iii)   finances, strategies, systems, research, surveys, plans, reports,

recommendations and conclusions;

(iv)   names of, arrangements with, or other information relating to, the Company's customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives and other persons who have business relationships with the Company or who are prospects for business relationships with the Company;

(v)    technical information, work products and know-how;

(vi)   cost, operating, and other management information systems, and other software and programming; and

(vii)  the name of any company or business, all or any substantial part of which is or at any time was a candidate for potential acquisition by the Company, together with all analyses and other information which the Company has generated, compiled or otherwise obtained with respect to such candidate, business or potential acquisition, or with respect to the potential effect of such acquisition on the Company's business, assets, financial results or prospects.

If the Company terminates Employee's employment with the Company other than for cause, Employee shall be entitled to receive from the Company his then current monthly salary for 12 months, subject to applicable withholdings. Any such payment by the Company shall be made either in one lump sum or in the same installments as applied during the Employee's employment, and all subject to applicable withholdings.

Non-Compete Provisions.   You make the following covenants in partial consideration for the substantial economic investment made by the Company in your hiring, education and training and the compensation and other benefits afforded by the Company to you. Such covenants were material inducements to the Company in hiring and employing you.

During your employment by the Company and for a period of 24 months immediately following the termination of your employment for any reason whatsoever, whether or not for cause, and unless the Company consents otherwise in writing,

(a) You will not, directly or indirectly (whether as an owner, partner, shareholder or investor [other than as a holder of less than 5% of the shares of a public company], joint venturer, manager, advisor, consultant or otherwise or through affiliates, relatives or otherwise) in the business of providing in whole or in part traffic control, flagging, sign and barricade service, permanent installations, pavement markings, trench shoring or any related businesses, in any Restricted Area (a "Restricted Area" means the area within a 200 mile radius of any and all Company locations in which you performed services for, or had management responsibilities for, at any time during the 24 month period preceding the termination of your employment with the Company;

(b) You will not anywhere directly or indirectly (whether as an owner, partner, employee, consultant, broker, contractor or otherwise, and whether personally or through other persons):

(i) solicit or accept the business of, or call upon, any person or entity who or which is or was (1) a customer, supplier, manufacturer, finder, broker, or other person who had a business relationship with the Company, or who was a prospect for a business relationship with the Company, at any time during the period of your employment, or (2) an affiliate of any such person;

(ii) approve, solicit or retain, or discuss the employment or retention (whether as an employee, consultant or otherwise) of any person who was an employee of the Company at any time during the one-year period preceding the termination of your employment by the Company;

(iii) solicit or encourage any person to leave the employ of the Company;

(iv) call upon or assist in the acquisition of any company which was, during the term of this Agreement, either called upon by an employee of the Company or by a broker or other third party, for possible acquisition by the Company or for which an employee of the Company or other person made an acquisition analysis for the Company.

(c)  Before taking any position during the 24 month period following the termination of your employment for any reason, with or without cause, with any person or entity that might be considered a competitor of the Company or may be prohibited under paragraph (a) above, you will give prior written notice to the Company of the name of such person or entity.  The Company shall be entitled to advise each such person or entity of the provisions of this Agreement, and to correspond and otherwise deal with each such person or entity to ensure that the provisions of this Agreement are enforced and duly discharged.

(d)  Since monetary damages will be inadequate and the Company will be irreparably damaged if the provisions of this Agreement are not specifically enforced, the Company shall be entitled to all remedies allowed by law, including but not limited to, an injunction restraining any violation of this Agreement (without any bond or other security being required) by you and by any person or entity to whom you provide or propose to provide any services in violation of this Agreement.

(e) If any provision contained in this Agreement is determined to be void, illegal or unenforceable, in whole or in part, then the other provisions contained herein shall remain in full force and effect as if the provision which was determined to be void, illegal, or unenforceable had not been contained herein.

(f) The courts enforcing this Agreement shall be entitled to modify the duration and scope of any restriction contained herein to the extent such restriction would otherwise be unenforceable, and such restriction as modified shall be enforced.

There are no oral representations, understandings or agreements with the Company or

any of its officers, directors or representatives covering the same subject matter as this offer letter.

Please sign below as your acceptance of all of these terms.  We are excited for you and this new opportunity with Highway Technologies, Inc.  We wish you success in your new position and look forward to your future contributions to the Company.

Very truly yours,

 **HIGHWAY TECHNOLOGIES**

By: _____
David N. Goltz
VP of Administration and General Counsel
915 Harger Road, Suite 350
Oak Brook, IL 60523
(630) 368-0920 ext. 108
(630) 368-8423 (fax)
dave.goltz@hwy-tech.com
www.hwy-tech.com


Agreed to and accepted by:

_____          1/9/08
Dave Porter                       Date