**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Highway Technologies, Inc., a Massachusetts corporation,<br><br>Plaintiff,<br><br>vs.<br><br>David Porter and Susan Porter, husband and wife; Rodd Jose and Barbara Jose, husband and wife; and Sunline Contracting, L.L.C., an Arizona limited liability company.<br><br>Defendants. | No. CV-09-1305-PHX-DGC<br><br>**TEMPORARY RESTRAINING ORDER** |

Highway Technologies, Inc. ("HT") is a provider of highway safety services and products and engages in pavement marking as one of its major lines of business. HT bids for and works on highway construction projects in Arizona and many other states. HT's Phoenix Branch Office ("Southwest Hub") serves as a major distribution center for HT products and services throughout the southwestern United States.

Rodd Jose began working for HT in 1989 and most recently served as Operations Manager for the Southwest Hub. David Porter started working for HT in 1983 and became Director of the Southwest Hub in January 2008. On May 1, 2009, counsel for Jose and Porter sent a letter to HT's corporate office announcing that they had decided to leave the company and planned to submit their "two-week notices." Their last day of employment with HT was May 5, 2009.

1    On June 17, 2009, HT filed a verified complaint against Jose, Porter, and Sunline Contracting, L.L.C., an Arizona company Jose and Porter formed in March of 2009. The complaint asserts eight claims: breach of contract, breach of covenants, breach of duty of loyalty – competition, breach of duty of loyalty – misuse of confidential information, breach of fiduciary duty, unfair competition, misappropriation of trade secrets, and computer fraud and abuse. HT seeks injunctive relief, compensatory and punitive damages, and an award of attorneys' fees and costs. Dkt. #1.

HT has filed a motion for a temporary restraining order. Dkt. #6. Defendants have filed a response. Dkt. #23. The Court held a hearing on June 19, 2009. Dkt. #26.

HT seeks to enjoin Jose and Porter from competing with HT, soliciting HT's customers and employees, and using or disclosing HT's confidential and proprietary information in violation of their contractual and common law duties. Dkt. #6 at 1. To obtain a temporary restraining order, HT must show that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary injunctive relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *See Winter v. NRDC*, 129 S. Ct. 365, 374 (2008); *Am. Trucking Ass'n, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009). The Court will address each of these requirements.

**I.    Success on the Merits.**

HT's second claim is based on alleged breaches of restrictive covenants contained in Jose and Porter's employment agreements with HT. Dkt. #1 ¶¶ 76-86. Those covenants prohibit Jose and Porter from (1) competing with HT within a 200-mile radius of certain HT locations for a two-year period after employment, (2) soliciting HT's customers and employees for a two-year period after employment, and (3) using or disclosing HT's confidential and proprietary information. *See* Dkt. #1-2. Defendants assert that the employment agreements are governed by Arizona law. Dkt. #23 at 5 & n.2.

Under Arizona law, "[t]he validity of a restrictive covenant is determined by its reasonableness." *Phoenix Orthopaedic Surgeons, Ltd. v. Peairs*, 790 P.2d 752, 758 (Ariz. Ct. App. 1989). A restrictive covenant is reasonable and therefore enforceable by injunction

1  where (1) the restraint does not exceed that necessary to protect the employer's legitimate
2  interests, (2) the restraint would not cause undue hardship to the employee, and (3) the
3  restraint would not cause harm to the public interest. *See id.* at 757; *Valley Med. Specialists*
4  *v. Farber*, 982 P.2d 1277, 1283 (Ariz. 1999) (en banc).

### A. Protection of Legitimate Business Interests.

Arizona law makes clear that an employer has "'a protectable interest in maintaining customer relationships when an employee leaves.'" *Peairs*, 790 P.2d at 758 (citation omitted). This is because an employer's clientele "'is an asset of value which has been acquired by virtue of effort and expenditures over a period of time, and which should be protected as a form of property.'" *Farber*, 982 P.2d at 1284 (citation omitted). The law will protect this legitimate interest by means of a covenant not to compete with the employer or solicit its customers "'for as long as may be necessary to replace the employee and give the replacement a chance to show he can do the job.'" *Peairs*, 790 P.2d at 758 (citation omitted).

Jose and Porter each worked for HT and its predecessors for more than 20 years. During that time, they interacted with many of HT's customers and "developed close personal relationships with them." Dkt. #6-3 at 7. Porter ultimately was entrusted with responsibility for all profits and losses within the Southwest Hub and was empowered to hire and terminate employees. Both men were authorized to enter into contracts on behalf of HT, and Porter was given power of attorney. *See* Dkt. #6-2 at 4-6, 14-18; Dkt. #6-3 at 17-20 (Jose and Porter resumes).

HT's Vice President of Operations, Shane Leonard, asserts by affidavit that given the length of time Jose and Porter worked for HT and the important managerial roles they held with the company, HT will likely need at least two years to find replacements and train those individuals to rebuild the Southwest Hub and the customer relationships and goodwill associated with it. Dkt. #6-2 at 6-7, ¶¶ 17-20. HT argues that the two-year restraint against competition and solicitation is therefore necessary and reasonable. Dkt. #6 at 10.

The purpose of a restrictive covenant in an employment agreement is to "prevent a skilled employee from leaving an employer and, based on his skill acquired from that

employment, luring away the employer's clients or business while the employer is vulnerable[.]" *Bryceland v. Northey*, 772 P.2d 36, 40 (Ariz. Ct. App. 1989). The evidence shows that Jose and Porter are skilled employees who acquired their skills in the highway safety industry from decades-long experience at HT and its predecessors. Jose and Porter have held themselves out as having "significant experience managing public sector striping and signage projects in Arizona," as having managed "over 300 projects from private sector projects at less than $500 thousand to major highway infrastructure at over $2 million," and as having "a combined 45 years in the striping industry [and] having held positions as hub managers, estimators, project managers, and equipment operators." Dkt. #6-3 at 5. Virtually all (if not all) of this experience was acquired at HT.

Jose and Porter acknowledge that HT is vulnerable to losing customers to them absent enforcement of the restrictive covenants. In their letter providing two-week notices to HT, Jose and Porter stated that if either one of their restrictive covenants was to be found unenforceable, they "would be free to go into active competition with [HT]" and they "expect that many customers would indeed move their business." Dkt. #6-2 at 11. In an April 2009 business plan prepared for the purchase of one of HT's competitors, Jose and Porter stated that they have through their years of employment "earned the trust" of HT's clients and have "an understanding that these [contractors] want to do business [with] them and not [HT]." Dkt. #6-3 at 7. They specifically noted in the plan that one of HT's strengths is the relationships Jose and Porter built with HT's customers, and observed that HT is "very susceptible" if they leave the company and start a competing business. *Id.* at 11.

This is not a case where Jose and Porter simply brought their "tools of the trade" to HT and took them when they left. Jose and Porter learned their skills while working at HT and its predecessors, and brought no customers with them to the job. *See* Dkt. #6-3 at 17-20; Dkt. #23-2 at 10 ¶ 38, 20 ¶ 36; *cf. Farber*, 982 P.2d at 1284. Jose and Porter's direct competition with HT will unfairly take advantage of the investment HT made in them, and will do so at a time when HT is vulnerable to competition due to their simultaneous departures from the company. The evidence supports a finding that the two-year period in

1 the restrictive covenants is reasonably necessary to allow HT to replace Jose and Porter and
2 give the new managers an opportunity to reestablish customer relationships and goodwill in
3 the industry. Given the widespread nature of pavement marking business, the 200-mile
4 geographical restriction is also reasonable.

Defendants contend that the two-year period is unnecessary given that HT has replaced other senior managers within months, not years. Dkt. #23 at 5. But Defendants have presented no evidence that this was sufficient time to fully train the new managers and to allow them to reestablish HT's competitiveness in the relevant market – a competitiveness that Jose and Porter admit is based on personal relationships. Nor have they presented evidence that key personal relationships – relationships that Jose and Porter built up over years of employment at HT – can be rebuilt by new managers in a matter of months. Porter argues that he was able to personify HT to its customers within only 16 months of becoming a manager at the Southwest Hub (Dkt. ##23-2 at 6, ¶ 18), but does not account for the fact that he had nearly 25 years experience with the company when he took that position. The record does not establish that HT will be able to replace Porter and Jose from within its own ranks.

**B.     Undue Hardship.**

Once it is determined that the restrictive covenant is necessary to protect a legitimate interest of the employer, Arizona courts consider whether "that interest is outweighed by the hardship to the employee[.]" *Farber*, 982 P.2d at 1283. Jose and Porter have testified that enforcement of the restrictive covenants would have disastrous effects on their households' standard of living and that they do not have the financial resources to relocate and start a new company. Dkt. ##23-2 at 10 ¶¶ 38-40, 20-21 ¶¶ 38-40. But where a restrictive covenant is otherwise enforceable, a showing of personal hardship generally will not amount to the "undue hardship" necessary to prevent enforcement of the covenant. *See Valley Med. Specialists v. Farber*, 950 P.2d 1184, 1188 (Ariz. Ct. App. 1997), *rev'd on other grounds,* 982 P.2d at 1286, (citing *Karlin v. Weinberg*, 390 A.2d 1161, 1166 (N.J. 1978)). This is particularly true where application of the covenant "results from the desire of an employee

to end his relationship with his employer rather than from any wrongdoing by the employer[.]" *Karlin*, 390 A.2d at 1169. Based on the present record, the Court concludes that any hardship to Jose and Porter does not outweigh the need to protect HT's legitimate interests.

### C. Public Policy.

The final consideration is whether enforcement of the restriction would cause harm to the public interest. *See Farber*, 982 P.2d at 1283. Defendants assert that the public interest would be served by direct competition between them and HT. Dkt. #23 at 15. This Court has recognized, however, that enforcement of restrictive covenants "is consistent with the public policy of protecting a company's interest in its customer base from unfair competition[.]" *Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 983 (D. Ariz. 2006). The Court concludes that enforcement of the covenants will not harm the public interest.

### D. Success on the Merits Summary.

The reasonableness of a restrictive covenant "is a fact-intensive inquiry that depends on the totality of the circumstances"; each case "must be decided on its own unique facts." *Farber*, 982 P.2d at 1283. The Court concludes, based on the record before it and the unique facts of this case, that the restrictive covenants in Jose and Porter's employment agreements are reasonable. The covenants protect legitimate interests of HT, they are no greater than necessary to protect those interests, they impose no undue hardship on Jose and Porter, and their enforcement would not harm the public interest. HT likely will succeed on its breach of covenants claim.[1]

## II. Irreparable Harm.

"Under Arizona law, 'once a protectable interest is established, irreparable injury is presumed to follow if the interest is not protected.'" *Compass Bank*, 430 F. Supp. 2d at 983 (quoting *Peairs*, 790 P.2d at 757). Competition by Jose and Porter will deprive HT of long-established customer relationships and good will, losses that cannot readily be quantified.

---

[1] Given this ruling, the Court need not address HT's other claims. *See Compass Bank*, 430 F. Supp. 2d at 983.

1  **III.  Balance of Equities.**

2  Jose and Porter specifically negotiated – and received substantial compensation for
3  – the restrictive covenants in their employment agreements. *See* Dkt. #6-2 at 6, ¶ 16. They
4  terminated their employment with full knowledge of those covenants. They told HT that they
5  had not yet determined what they would be doing after their departure (Dkt. #6-2 at 11), but
6  in fact they already had formed a competing business (Dkt. #6-2 at 20-23). Absent
7  enforcement of the restrictive covenants, they will be free to compete directly against HT
8  during a time, as they admit, when HT is vulnerable as a result of their departures. Any
9  personal hardship Defendants will suffer because of their decision to leave HT and breach
10 their covenants is outweighed by the irreparable injury HT will suffer absent injunctive relief.

11 **IV.  Public Interest.**

12 As explained above, enforcement of the restrictive covenants is consistent with the
13 public policy of protecting a company's interest in its customer base from unfair competition.
14 *See Compass*, 430 F. Supp. 2d at 983; *see also Universal Engraving, Inc. v. Duarte*, 519 F.
15 Supp. 2d 1140, 1149-50 (D. Kan. 2007) (there is "a public interest in upholding enforceable
16 contracts" and "the public interest is served where unfair competition is restrained");
17 *Mercury Cos., Inc. v. First Am. Corp.*, No. 08-cv-00911-WYD-CBS, 2008 WL 4861950, at
18 *9 (D. Colo. Nov. 10, 2008) (public interest favors enforcement of restrictive covenant).

19 **V.  Conclusion.**

20 HT has satisfied the four-part test for injunctive relief: HT is likely to succeed on its
21 breach of covenants claim, HT is likely to suffer irreparable harm if Jose and Porter are not
22 enjoined, the balance of equities tips in HT's favor, and injunctive relief is in the public
23 interest.

24 **IT IS ORDERED:**

25 1. Plaintiff Highway Technologies, Inc.'s ("HT's") motion to file exhibit under
26    seal (Dkt. #22) is **granted**. The Clerk is directed to file the lodged Exhibit A
27    (Dkt. #9).

28 2. HT's motion for temporary restraining order (Dkt. #6) is **granted**.

3. Defendant Rodd Jose is enjoined from: (i) competing with HT in any pavement marking business within a 200-mile radius of 4200 E. Broadway, Phoenix, Arizona, (ii) soliciting or accepting such business from HT customers identified in sealed Exhibit A, (iii) soliciting for employment any person employed by HT as of May 5, 2009, and (iv) using or disclosing any of HT's confidential and proprietary information.

4. Defendant David Porter is enjoined from: (i) competing with HT in any pavement marking business within a 200-mile radius of HT's Phoenix, Arizona, locations, (ii) soliciting or accepting such business from the HT customers identified in sealed Exhibit A, (iii) soliciting for employment any person employed by HT as of May 5, 2009, and (iv) using or disclosing HT's confidential and proprietary information.

5. This temporary restraining order shall become effective upon the posting by HT of a $10,000 bond.

6. This temporary restraining order shall remain in effect until the conclusion of the preliminary injunction hearing on July 16, 2009.[2]

7. A preliminary injunction hearing is set for July 16, 2009 at 9:00 a.m.

Dated June 26, 2009 at 5:40 p.m.

_____
David G. Campbell
United States District Judge

---

[2] The Court recognizes that this period exceeds the ten-day period set forth in Rule 65, but finds good cause for the extension because the Court will be away on judicial business the entire week of July 6, 2009, when the ten-day period would otherwise end. *See* Fed. R. Civ. P. 65(b)(2) (TRO can be extended for up to ten additional days for good cause).